Our fifth case for this morning is Valdivia v. Township High School District 214. Mr. Good morning, your honors. May it please the court, Michael Kajawa on behalf of the defendant, Appellate Township High School District 214. We're here this morning asking this court to reverse the district court's denial of our Rule 50B motion for JNOV and to overturn the jury's verdict in this manner for three reasons. Number one, the plaintiff in this case did not qualify for FMLA leave. Number two, there was no actual notice of plaintiff's need for leave given to District 214. And number three, there was no constructive notice given to District 214 of plaintiff's need for leave. And we're also asking this court to go a step further on that constructive notice argument and join in with the Eighth Circuit and the Scobie decision and eliminate the constructive notice element from FMLA analysis based on the 2009 amendment to 825.303A of the FMLA. Let me start there. I think we're confusing a couple of things and no criticism of the Eighth Circuit here, but there's language in the new regulation that recognizes that notice is not always going to be in the form of, I hereby notify you that I need FMLA leave. Is it District 214's position that anything short of a declaration of that sort can be notice? No, that's not the district's position. The district's position would be that the new language in the statute, which deleted that extraordinary circumstances language. No, I guess I'm not making myself clear. The new regulation states it generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements. That use of the word generally says to me, but not always. That's one question, but I'm asking a broader question. Is it the district's position that only a statement to the effect of, I am now requesting leave under the FMLA because I have X condition wrong with me. Is that the only thing that we'll do or is something less than that? I think it is something less than that based upon the language in the new. Not constructive notice. Constructive notice says to me that you didn't really have notice that you should have. But actual notice can be given by conduct as well as by words. And when somebody is falling apart in your office, why isn't that notice by conduct? Well, I think, first of all, when you look at the circumstances as a whole, even taking them in the light most favorable to the plaintiff in this case, is that she talks about the fact that she was emotional and crying. But every other witness who testified said that the reason for the... I had a lot of teachers when I was going to school that were reduced to crying by me. But the fact is, I mean, she's crying. She testifies that she's crying uncontrollably in the principal's office and Ms. Cece's office. And weirdly enough, Ms. Cece testifies, and the jury may have thought this was a little peculiar, that tears would come down her face, but she somehow doesn't consider that to be crying. Well, the jury might have thought tears coming down your face is the same thing as crying. And there's testimony in front of the jury that she is emotionally falling apart in front of the principal. So why isn't the right way to look at that, especially in a case where mental illness is at issue, why isn't that actual notice by conduct? Well, I think that in certain circumstances it could be. And if we look at actual notice, what we have here is the only thing she ever said regarding... It was one line in the transcript was, I'm thinking I might have to leave for medical reasons. But she asks, in a sense, for an accommodation. She asks, can I go to a 10-month job? That would be an accommodation for FMLA purposes or ADA purposes. She's not using lawyer language for sure, but she is, and she's leaving early and she's coming late and she's crying. Why can't a jury take this as a situation in which notice has been given to the district? Well, I think certainly the jury, based on its ruling, did find that there was some notice. Right. So why is the jury so mistaken that 50B requires us to throw their verdict out? Because, well, first of all, we don't even have to get to notice because there was no serious health condition that rendered her unable to perform the functions of her job. But we preview the evidence that was before the jury. She's displaying emotional difficulties. And then there's evidence from immediately after her time at District 214 that the various people indicate can be extrapolated backwards two weeks. No one's asking to go back seven years, a brief period of time to say this condition didn't just spring up the day she walked into my office, it's been there. But when we look at the idea of a serious health condition and her ability to perform her job, the day her resignation became effective, August 11th of 2016, is the very first day she ever went to a doctor. And that doctor, although that doctor did not diagnose her with depression and anxiety, that doctor... ...put no work restrictions on her whatsoever and knew the reason she came in and she said, I'm switching jobs, I'm starting a new job tomorrow, and I'm nervous about it. And the doctor didn't say, oh, my gosh, you're not able to go work at that job or you're not going to be able to perform the functions of that job. The doctor put no work restrictions on and she did, in fact, go to work at her new school district. Four days and then 10 days after the Dr. Glawson visit, she's in the ER. Correct. But when we think about when Plaintiff was employed... Why isn't this a jury question? I mean, that's what I'm trying to... Could the jury have ruled in the district's favor? Absolutely. I don't have any question about that. But did they have to? I think when you look at the standards under the FMLA for a serious medical condition, no doubt about it, in certain circumstances, depression and anxiety are FMLA eligible. Absolutely. And mental health issues are hard to detect. In certain cases. It's just not this case. Because there's no medical testimony whatsoever that ties in the medical treatment that she was having before to the issues she was complaining of. Nobody's saying it was earlier treatment, right? But I thought the doctors who provided the diagnosis with the emergency room treatment and follow-up care, don't those diagnoses require that those symptoms have persisted? Even if they had persisted... Is that correct? Yes, they did talk about the onset of those symptoms, mainly based on her report to them about when those things had begun. That's what doctors do. Doctors take a history. Certainly, and that's part of the diagnostic criteria for diagnosing those conditions. But that does not mean that she was unable to perform the functions of her job at District 214 because of that. If that was the case, certainly Dr. Glisson, the very first time she went to the doctor, would have said, you have a work restriction. You can't go to this new job tomorrow. In fact, I don't know how you were working at your prior job, but you're not able to go and start a brand new job with all the stressors involved in that, but yet she did. And she didn't ask the doctor for a note that I can take back to District 214. If you want to just quickly summarize, you're running out of time. So the plaintiff was not qualified for FMLA leave in this case because she was able to do all of the aspects of her job. And we've talked about Dr. Glisson. As far as the actual notice, there was no actual notice in this case when you look at the context. I think we have your point. You're down to 30 seconds. Thank you, Your Honor. All right. Thank you. Mr. Caffarelli. Good morning. Alejandro Caffarelli for the Plaintiff's Appeal. May it please the Court. Judge, I think your question nailed it on the head in that whether or not she was disabled is a question for the jury. There's no argument as to that particular jury instruction being improper. So what's your strongest evidence that as of the time she's working at District 214, she was already suffering from the kind of serious condition that would justify FMLA leave? Well, first of all, there's no question that she was diagnosed with and went to the ER. After she leaves. And your point is correct that the diagnosis of depression, I believe this is in the record, and Dr. Walyudin may have testified to it as well, requires a continued course of conduct in order to reach that diagnosis. You can't walk in one day and say, you know, I'm feeling down, I'm crying a lot. Doctors will say, well, come back to me in a couple of weeks. And if you're still feeling that way, then we may have a problem. But more significantly, all of the symptoms that she described are consistent with a severe depression. It wasn't just crying on one day. The testimony was that she was crying on a regular basis almost daily, sobbing out of control, in her words, as if somebody had died in Ms. Cece's office, coming in late, leaving early. She's chronically indecisive. She reports to Cece that she's suffering from insomnia and weight loss. Is there evidence that she's not getting the job done? Yes. She's unable to, and I believe there's testimony that she's unable to complete tasks. And on one of the occasions when she's sobbing in Ms. Cece's office and telling her she doesn't know what to do and so forth, Cece is giving her an assignment, and then she breaks down and says, don't do this to me. In other words, I can't do this assignment. She can't, you know, just because somebody's present, I hate to say it, but there are a lot of employees around the world who show up and go to work and can't really do their job. But for whatever reason, the employer chooses not to fire them. And for whatever reason, Ms. Cece chose not to fire her. I believe the evidence showed, and the jury believed, is because the last thing Ms. Cece could afford is to be without an assistant at the beginning of the school year. So okay, it looks like Ms. Valdivia is kind of off her rocker, but let's just get through this opening day because I need somebody there to be my assistant. When clearly the symptoms that were manifesting showed that she had really lost all control. So my biggest problem, Mr. Caffarelli, is comparing what Ms. Cece saw to what the doctor saw on August 11th. Right? She goes to a doctor, and as the defense points out, the doctor doesn't say, don't go to work. Go ahead the next day. Here's some pills. Go to work. Your case seems to impose on an employer a level of medical sophistication and surveillance that is beyond what even a doctor is asked to provide. Right. Actually, that's not quite correct. What we believe the FMLA requires and what this court has held is that an employer isn't required to diagnose a patient. An employer only has to know under the notice requirements when something is happening. The employer is required to recognize it's serious enough that you need time off. Correct. There's something happening. Not that you do need that. Well, not that you do need that. You may need time off. Correct. But that may not have been the issue presented to the doctor, because once the employer is put on notice, the employer is then obligated to advise the employee of his or her FMLA rights. Let's back up. So you're saying that Dr. Glawson on the 11th was never asked, should I go to work tomorrow? Do we know? We don't know. The doctor gave her the prescription and said, off you go. She diagnoses. Valdivia reports a bunch of symptoms. Doctor says, well, this deserves Xanax at least. Let's see how it goes. But the doctor hasn't been asked for a fitness to work evaluation. There is one later. There is one later, right. But there's a question as to whether that even went into issues of mental health. It was a work physical, not an evaluation by the doctor. That was only a physical. That was a physical. My point is, once the employer notices that there may be something going on, they have the obligation to provide the form, which is the Department of Labor's form. And that form is what the employee takes to the doctor and asks specific questions about the diagnosis, the prognosis, is the employee able or not able to work. And what this case is about is that they never provided her with that form. So right now we're just speculating as to what could have or couldn't have happened at the doctor's office, when the truth is they have the obligation to provide her with that form. So you're saying this case is essentially about a trigger. It's about a trigger. First base, not all the way home. Right. And your point about the regulation, and, again, I'll get to the waiver issue in a minute, but your point about the regulation is correct. Constructive notice is still noticed, much like in the Title VII case. Constructive termination is still a termination. It's still an adverse action. And the elimination of that language. So why are we calling it constructive notice? Does constructive notice mean to you that the employer knows that something is wrong but hasn't quite figured out what it is? Or is constructive notice notice it doesn't somehow reach the employer but it should have because the employer, like, wasn't reading their emails for a week or something? Well, it could be any of those things. The language that was deleted from the Department of Labor's regulation was that no notice is required under certain circumstances. What I'm saying is that there's a difference between constructive notice and no notice. So clearly before, with the old regulation, an employee could provide no notice whatsoever. They could walk off the job, and the employer may still be on the hook because the FMLA is a strict liability statute. So what the Department of Labor said is that, okay, well, that's a step too far. We're not going to say that no notice is required. But as you observed under the new language, constructive notice, just like a constructive discharge in the Title VII context, is completely consistent with providing some type of notice that triggers the employer's obligation to say, okay, something's going on here. Why don't you go see a doctor? Here's your form. And if the employee then says, in some of the cases that were cited by the defendant, some employees are given that opportunity. They say, no, I don't need to see a doctor. Well, that's their prerogative, and then they don't have any rights under the FMLA. But the point is, particularly the FMLA is designed to protect people who are ill, and particularly in the case of mental illness where they may not know what's going on, to protect them if they're acting out of sorts to the degree that Ms. Valdivia was acting, at least as far as the evidence came out in this case, to trigger the employer's obligation to advise the employee that they may be qualified for leave, give them the form, and then the ball is in the employee's hands. And that's just not what happened here. But I want to bring up this. Mr. Caffarelli, would it be correct to say your case is not limited to just plaintiff's behavior, right? Correct. You're arguing, if I recall the evidence correctly, but in essence, there were some signals, I need some time off to cope. Correct. The 10-month request, maybe I need time off for medical reasons. It's not a lot, frankly, but I don't know. That's what I think. We have the constructive notice with the behavior, if you want to call it constructive notice, but then I think it also dips into the realm of direct notice because in the context of this job, which is a school job, asking for a 10-month position is de facto asking for time off because all of this was taking place over the summer. So she's saying to Ms. Cece, can I switch to a 10-month? In other words, can I take the next month and a half off before school starts? And so that is a form of direct notice that she needs time off, even though she's not saying leave or saying the words FMLA, she's asking for time off. And at the risk of sounding like somebody who doesn't live in Chicago, schools start relatively late in this? Just after Labor Day. I think in this case it was after Labor Day. Right, and everything here happened late. And they start in early August, so about the time of year this thing was happening. Right, right. It looks like I'm nearing the end of my time. I did briefly want to touch on the waiver issue. I just wanted to point out that for purposes of the instruction as written, number one, this is the Seventh Circuit's instruction in the draft pattern instructions that I used, drafted by this court or a committee of this court, approved by this court verbatim. And these Seventh Circuit instructions were last on the constructive notice issue were last amended in 2017, which is eight years after the DOL amended the relevant regulation. Both parties relied on this instruction. No one objected is what you're saying. Nobody objected to it. And, frankly, just to clarify, I've got ten seconds here. At no time did the defendants ever bring up the argument that there is no constructive notice because the regulation has changed. Not in the motion to dismiss, motion for summary judgment, pretrial conference, jury instructions, Rule 50A motion, Rule 50B motion. There's not a single sentence from the defendants saying that this regulation change means that constructive notice is no longer valid. They're only appealing the JNOB there. And the judge in the footnotes in two sentences says, well, you know, some courts have claimed that. Right. Right. So you get my point. We had no opportunity to develop this argument below at all. So that's all I have unless Your Honor has any other questions. All right. I see none, so thank you very much. Thank you. Anything further, Mr. Kujawa? I will give you a whole minute. Thank you. So when we talk about notice, there's an element before notice in FMLA, which is a qualified health condition that renders the individual unable to do their job. And what we know in this case is there never was one because the reason that Ms. Valdivia went to the doctor on August 11th was she was starting that new job. She gave her the litany of her complaints. She told her what was happening in her life and said, the quote is right in the record, I'm nervous about starting my new job tomorrow. And the doctor did not put any work restrictions on her. It's also important to note that in that week between the submitting. What about Dr. Walyudin? Dr. Walyudin said he could provide no medical opinion that what she was suffering from when he first saw her, which is August 31st. Right. So 20 days after the time that she actually was resigned, he could not tie that back to District 211 or 214. He didn't provide that opinion. In the week between when she submitted her resignation. Well, there's no rule that District 214 had to cause her mental illness. No. She just had to have it. None whatsoever. But not only was she doing her job at District 214, in that time period she applied for, accepted, and went through the medical portions for two other jobs. Which is a little extraordinary. Okay. Well, I think we have your point. So thank you very much. Thanks to both counsel. We'll take the case under advisement.